IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-30087 |
| | ) | |
| JAMES J. DENBY, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant James J. Denby's Motion to Declare Search of Defendant's Residence and Property Unconstitutional as a Violation of the Fourth Amendment and Suppress All Evidence Which Are the Fruits of This Illegal Search (d/e 45) (Motion to Suppress). The Government filed a Response to Defendant's Motion to Suppress Evidence (d/e 48) (Response). For the reasons set forth below, the Motion to Suppress is denied.

FACTS

The Government has charged Defendant Denby in a Second Superseding Indictment with one count of conspiracy to manufacture and

1

distribute methamphetamine, one count of conspiracy to steal and transport stolen anhydrous ammonia, one count of conspiracy to manufacture methamphetamine, one count of possession of a listed chemical, and one count of maintaining a place to manufacture methamphetamine. Superseding Indictment (d/e 24).

At 1:10 a.m. on November 14, 2006, a judge of the Circuit Court of Macoupin County authorized a search warrant for Denby's residence and any outbuildings and vehicles located on the premises. See Response (d/e 48), Exhibit 1, Search Warrant, at 6-7. The judge authorized the search warrant based on an Affidavit and Complaint by Illinois State Police Inspector Brian Lawton. Id., Exhibit 1, Affidavit and Complaint, at 3-4.

Inspector Lawton's Affidavit and Complaint stated that at approximately 9:14 p.m. November 13, 2006, he spoke with an individual named Benjamin Buus. Buus told Inspector Lawton that on November 9, 2006, Denby had indicated that Buus could come by his house anytime to retrieve Buus's father's truck. On November 13, 2006, at approximately 8:30 p.m., Buus went to Denby's home to retrieve the vehicle. When he arrived, Denby met him at the entrance of a shed on the north end of the property and yelled at him to "get the fuck off the property." When Buus

reminded Denby who he was and why he was there, Denby replied, "Buus, you need to leave." <u>Affidavit and Complaint</u>, at 3.

While they were speaking, Buus could smell a strong odor of anhydrous ammonia coming from the shed. Buus advised Inspector Lawton that he grew up on a farm and was familiar with the smell and uses of the chemical. Buus did not observe any farm equipment, such as big tractors, anhydrous ammonia applicators, or anhydrous ammonia tanks, at the Denby residence. Inspector Lawton's Affidavit stated that he knew, based on his extensive law enforcement training and experience, that anhydrous ammonia is used in the production and manufacture of methamphetamine.

Pursuant to the search warrant, Illinois State Police officers searched Denby's home and property at 2:20 a.m. on November 14, 2006. They allegedly found methamphetamine and other contraband in the house, shed, and other structures on Denby's property.

The Affidavit and Complaint for a search warrant did not mention that Buus recently had been released from prison after serving a sentence for forgery felony conviction. Buus was on parole with the Illinois Department of Corrections.

ANALYSIS

Denby argues that the search of his home and property violated the Fourth Amendment, and the evidence obtained and subsequent statements should be excluded. "Simply stated, the exclusionary rule operates to prevent the Government from using evidence seized as the result of an illegal search in a subsequent criminal prosecution." United States v. Harju, 466 F.3d 602, 605 (7th Cir. 2006) (internal quotation marks omitted).

When law enforcement presents a judge only an affidavit in application for a search warrant, the validity of the warrant rests on the strength of that affidavit. United States v. Peck, 317 F.3d 754, 755 (7th Cir. 2003). Such is the case here. When an affidavit is based on information from an informant, courts first must assess the credibility of the informant, considering:

> (1) whether the informant personally observed the events; (2) the degree of detail shown in the informant's statements; (3) whether the police independently corroborated the information; (4) the interval of time between the events and application for a warrant; and (5) whether the informant appeared in person before the judicial officer who issued the warrant.

United States v. Mykytiuk, 402 F.3d 773, 776 (7th Cir. 2005).

The issuing judge here did not know of Buus's forgery conviction, but

Denby has not alleged that Inspector Lawton deliberately omitted this information or drafted his Affidavit in reckless disregard for the truth. Without such an allegation, the Court will consider only the Affidavit as presented to the issuing judge. See Franks v. Delaware, 438 U.S. 154, (1978) (holding that affidavits are presumed valid, and only an allegation, accompanied by an offer of proof, that the drafting officer was deliberately false or reckless in his regard for the truth will entitle a defendant to an evidentiary hearing on the reliability of the affidavit). Here, the issuing judge reasonably determined that Buus was reliable.

First, the judge read in the Affidavit that Buus had personally smelled the odor of anhydrous ammonia emanating from Denby's shed. His personal observations lend credence to his report.

Second, Buus offered sufficient detail to support a finding of reliability. He stated that the shed was located on the north end of Denby's property. He said the odor was strong, and he recognized it from growing up on a farm. He stated that no large farm equipment, including anhydrous ammonia applicators or tanks, was present. Buus also discussed his reason for entering Denby's property, and Denby's response when he arrived.

Third, the Court finds that Inspector Lawton independently

corroborated at least some of Buus's information. The Affidavit is not entirely clear on whether Buus provided Inspector Lawton with Denby's address or a description of the property. However, it states:

> That upon checking with the Macoupin County Sheriff's Department inmate intake database, your affiant has confirmed that JAMES JORDAN DENBY listed his residence information at 11490 Liberty Church Road, Carlinville, Macoupin County, Illinois.
>
> Based upon the above information, your affiant has reasonable cause to believe and does believe that located at the property at 11490 Liberty Church Road, Carlinville, Macoupin County, Illinois, being a white single family multi-story home with outbuildings, is fruits of the offense of Violation of the Illinois Methamphetamine Control Act.

Response, Exhibit 1, Affidavit and Complaint for Search Warrant, at 4. The Court reads this passage to indicate that Officer Lawton confirmed that Denby's property included a home with outbuildings.

Fourth, the interval of time between the events and application for a warrant was quite short. Buus stated that he detected the anhydrous ammonia smell from Denby's shed around 8:30 p.m. At 9:15 p.m., he reported it to Inspector Lawton. By 1:10 a.m., the court issued a search warrant. The fact that less than five hours elapsed between the events witnessed by Buus and the issuance of a warrant supports a finding of

6

reliability.

Fifth, while Buus did not appear in person before the issuing judge, Inspector Lawton's Affidavit referred to him by name.

> Though an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity, a magistrate in the exercise of sound judgment is entitled to give greater weight to a tip from a known informant, who can be held responsible should he be found to have given misleading information to police officers, and thus has an incentive to provide truthful information to the detectives.

United States v. Koerth, 312 F.3d 862, 871 (7th Cir. 2002) (internal quotation marks and citations omitted). Because Buus was named, the issuing judge was entitled to view his information with less suspicion, despite the fact that he did not appear in person.

Based on these factors, the Court finds that it was not unreasonable for the issuing judge to find Buus a reliable informant. Reliability determined, the issuing judge faced the issue of whether Buus's information sufficiently supported a finding of probable cause. "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." Peck, 317 F.3d at 756. The issuing judge's finding of probable cause "should be paid great

deference by reviewing courts." Illinois v. Gates, 462 U.S. 213, 236 (1983) (internal quotation marks omitted).

The Court holds that the issuing judge's finding of probable cause to search the shed was proper. Buus was familiar with the odor of anhydrous ammonia and clearly smelled it emanating from the shed. Officer Lawton knew, through his law enforcement experience, that anhydrous ammonia is used in methamphetamine manufacturing. Denby is correct that "the smell of a noncontraband substance having a number of legitimate uses, standing alone does not establish probable cause to search a residence." United States v. Tate, 694 F.2d 1217, 1221 (9th Cir. 1982), rev'd on other grounds, 468 U.S. 1206 (1984). Yet, probable cause here was not based just on the smell of a chemical used in farming. Here, Buus observed the odor in the absence of any anhydrous ammonia farm equipment. And Denby insisted that Buus leave the property immediately -- even though he had told Buus only four days earlier to come pick up his father's vehicle anytime. Search of the shed was proper.

The search of the home is more problematic, but the Court finds this situation analogous to other Seventh Circuit cases recognizing probable cause. Here, the application for warrant included no information

specifically suggesting evidence of illegal activity in Denby's home itself. Denby cites to two non-binding Circuit cases holding that evidence that a defendant is engaged in drug activity does not automatically establish probable cause to search his home. See United States v. Freeman, 685 F.2d 942, 949 (5th Cir. 1982); United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993) ("In this and other circuits, residential searches have been upheld only where some information links the criminal activity to the defendant's residence.").

The Seventh Circuit has held, however, that evidence of general participation in a drug trafficking scheme may create probable cause to search a participant's home, even absent direct evidence that drug-related activity was occurring there, because "evidence is likely to be found where the dealers live." United States v. Lamon, 930 F.2d 1183, 1188 (7th Cir. 1991) (internal quotation marks omitted) (finding probable cause to search defendant's home based on evidence the defendant was dealing drugs out of his car and another house).

"A judge is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." Mykytiuk, 402 F.3d at 778 (internal quotation marks

9

omitted). In <u>United States v. Feliz</u>, the First Circuit found that probable cause to search a drug suspect's home "can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide" evidence. <u>Feliz</u>, 182 F.3d 82, 88 (1st Cir. 1999) (internal quotation marks omitted).

Here, probable cause to search the shed existed based on evidence of methamphetamine manufacturing. The judge was entitled to use common sense and draw the reasonable inference that an individual cooking methamphetamine would do so in an outbuilding to cut down on the smell in the home. That individual nonetheless would complete the preparation process in the home, as most methamphetamine manufacturers do, or at least keep drug paraphernalia there. See <u>Mykytiuk</u>, 402 F.3d at 778 ("[I]t is reasonable to infer that a person who manufactures methamphetamine would keep drugs or materials in his house.").

In <u>United States v. Walker</u>, the Seventh Circuit stated:

> We do not read either *Lamon* or *Feliz* as holding flatly that there is always probable cause to search a drug dealer's home, merely because there is probable cause to believe that he or she is engaged in drug trafficking. The facts of a particular case may indicate, for example, that the dealer uses a "safe house" or

another participant's property for all of his drug-related business, perhaps to keep information about his activities from others in the home. As usual, the inquiry is highly fact-specific.

Walker, 145 Fed.Appx. 552, 555 (7th Cir. 2005). Walker is nonprecedential, but it is persuasive. It suggests that the Seventh Circuit falls in line with Denby's Fourth and Fifth Circuit cases in holding that no blanket rule allows for search of the home based on evidence of general drug activity. But, it also identifies circumstances preventing a finding of probable cause, neither of which exist here. There was no hint here of a safe house or business on another person's property (the shed was on the same property as Denby's home), and no other information suggested that Denby was unlikely to have evidence of drug activity in his home. Thus, it was logical and reasonable to surmise that Denby kept drug paraphernalia in his home. While a close call, the Court finds that Seventh Circuit case law supports a finding of probable cause to search Denby's home.

In addition to the shed and the home, however, the search warrant covered "any outbuildings and vehicles located on said premises." Response, Exhibit 1, Search Warrant, at 7. No information in the Affidavit specifically suggested evidence in vehicles or outbuildings other than the shed, and the Seventh Circuit case law recognizing probable cause to search

11

the homes of suspected drug traffickers does not cover vehicles and other outbuildings. Thus, the Court finds that probable cause did not exist to search other outbuildings and vehicles. The search warrant was invalid to the extent it allowed search of other outbuildings and vehicles.

Yet, to the extent this search warrant was invalid, if the officers relied on it in good faith, the evidence seized during the search is still admissible. The Government bears the initial burden of proving that the police relied in good faith on the warrant, but an officer's decision to obtain a warrant is prima facie evidence that he was acting in good faith. <u>Harju</u>, 466 F.3d at 607. Here, because Inspector Lawton sought a warrant, the Government has met its initial burden.

"A defendant can rebut the presumption of good faith only by showing that the issuing judge abandoned his role as a neutral and detached arbiter, that the officers were dishonest or reckless in preparing the supporting affidavit, or that the affidavit was so lacking in probable cause that no officer could have relied on it." <u>Mykytiuk</u>, 402 F.3d at 777. Here, Denby has offered no evidence that the issuing judge was biased or merely rubber stamped the application. Moreover, while Denby asserts that the affidavit failed to state that Buus was on parole following a forgery conviction, he

does not argue that Inspector Lawton deliberately concealed, or even knew, this information. Thus, the only question is whether the Affidavit was so obviously deficient that no officer could have relied on it.

The Court finds that it was not. As discussed above, case law clearly supported a finding of probable cause to search the shed as well as the home here; thus the Affidavit could not have been so obviously deficient that no officer would have relied on it. While the Court has found that probable cause did not support a search of other outbuildings or vehicles on the property, Denby has not identified any instances in which "courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand." Harju, 466 F.3d at 607. The Affidavit was not so clearly lacking that, despite the issuing judge's contrary conclusion, the officers should have known that probable cause did not exist.

THEREFORE, Defendant James J. Denby's Motion to Declare Search of Defendant's Residence and Property Unconstitutional as a Violation of the Fourth Amendment and Suppress All Evidence Which Are the Fruits of This Illegal Search (d/e 45) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER: February 15, 2008

FOR THE COURT:

s/ Jeanne E. Scott<br>
JEANNE E. SCOTT<br>
UNITED STATES DISTRICT JUDGE